Our next case is United States v. Stover, Mr. Kingsbury. Good morning and may it please the court, my name is Doug Kingsbury, I appear this morning on behalf of the appellants Gigi and Arthur Stover. This is an appeal of the entry of summary judgment on the issue of whether the government's claim was barred by the 10-year statute of limitations. The factual issue revolved around the government's assertion that in December of 2008, the Stovers submitted a proposed installment agreement to the IRS, which operated to toll the statute of limitations. The Stovers, on the other hand, contend that that didn't happen until 2009. So that was the factual issue. What I want to do this morning is list for the court. The parties, I think, are in agreement that if indeed it didn't occur until 2009, then the IRS is out of time. The parties agree. That's why the dispute is material. What I'd like to do this morning is list for the court four reasons why there's a genuine issue of material fact here, and in fact, why a reasonable jury could return a verdict for the Stovers on this issue. And I want to begin by framing the factual issue this way. The government's case rests almost entirely on the entry in an IRS transcript which reads pending installment agreement, and there's a date, December the 12th, 2008. The Stovers contend that that entry had to have been made in error because they didn't contact the IRS about a proposed installment agreement until 2009. The first reason why there's a genuine issue here revolves around the fact- Is your argument limited to it being an error? I take that to be one of the arguments. I thought I understood you to also be making the argument that it might represent something else. It might have represented something short of a formal request for an installment agreement. Are you making both of those arguments, or is it just- Yes. You could read this as saying a number of different things. One is like this was just an error, right? So it's like they shouldn't have entered anything at all. But you seem to also make a second argument that maybe it's not an error, maybe it just reflects sort of their supposition that an installment agreement would be requested because an installment agreement request requires specific information to be included. Yes. The primary argument here is that it's a mistake entirely because the Stovers' testimony is that they didn't contact the IRS at all about this until 2009. But, I mean, there are several possibilities of why this could have been done in error. One is, as we pointed out in the brief, in one place the revenue officer conceded that she got this case mixed up with another of her cases. She had 37 cases, and she said, I really need to get this down to 20, and I thought the Stovers had submitted an information collection statement. And you know what? I got it mixed up with one of my other cases. They really never did submit one. So that's one possibility of how this could have been done in error. Somebody opened the transcript and got it confused with a different taxpayer. So long as there are possibilities that it could be something other than an error, that's all you would need at this stage. That's absolutely correct, Your Honor. But I will go ahead and summarize these four, these three additional reasons why this is a genuine issue. Let me ask you, as you go through that, as I understand the IRS's argument related to this Form 4340 that has the entry on it about a request for installment agreement pending, part of their argument is that because it is on this IRS form that it should be presumed to be correct, and the presumption is such that it would foreclose a finding of a material dispute of fact, and therefore they would be entitled to summary judgment. What's your response to that argument? On the presumption of correctness, yes. And that argument resounded with the district court. There are three reasons why the presumption of correctness does not apply at this stage of the proceeding. The first is, as we pointed out in this court's decision in O'Connor, we can't use the presumption of correctness to supplant the traditional Rule 56 standard. You know, the presumption says we're going to infer in favor of the movement that this is correct, and you have to overcome it at summary judgment. But as this court said in O'Connor, you can't use that at the summary judgment stage when you have to, all inferences go against the movement. And we're going to accept the facts as put forward by the non-movement as true at this stage, even though this court said at trial we may have a presumption applying a presumption of correctness that the non-movement will have to overcome. That's the first reason. So in that case, if this was at the trial stage, if the trial of fact did not find the Stover's evidence convincing, it could apply a presumption of correctness to establish the date? I'm going to, if we get to the trial stage, I would say no to the trial court judge. We don't apply the presumption of correctness in this case for two reasons. One is, I don't believe this is the type of factual assertion by the IRS to which the presumption of correctness applies. Normally they apply when there's been some analysis, some determination by the  Here what we have is basically a naked statement on a transcript with, and I'm going to address this in a moment, no foundation for the basis for this entry. And as the United States Supreme Court held, and I apologize to my colleague because this is not in my brief, United States v. Janus 428, United States 423, a naked assertion by the IRS without foundation is not entitled to the presumption of correctness. And the third reason that I would push back at trial that it doesn't apply here is because after this court's decision in O'Connor, Congress amended the statute that governs burden of proof in these tax cases, 26 United States Code section 7491, which now reads, and this is allocating the burden of proof, if, I'm quoting now, if in any court proceeding a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer, the secretary shall have the burden of proof with respect to such issue. Counsel, I'm sorry to interrupt. Can I just stop you there though? Just, can you articulate what the credible evidence is in the record that the taxpayer has introduced? I understand the criticism with what the government's transcript says, but what is the credible evidence? Well, first let me go right to the deposition testimony of Mr. Stover. Joint appendix, page 161, he explains how the money that they had planned to use to cashed in 2008, and they didn't have the available money to pay the taxes. He said at joint appendix, page 170, but at Christmastime, so this would have been after the alleged request for an installment agreement, at Christmastime he testified, we still thought we were going to be able to be okay. We thought the market was going to turn. Page 168. Let me stop you there, and I think we've all looked carefully at this. What this isn't is an unambiguous affidavit or declaration from the taxpayer saying, in the month of December of 2008, we never contacted the IRS. We never requested an installment agreement. There's a lot of sort of somewhat confused language about, I don't remember having done this, or I contacted CPA. I think these things may have happened in 2009. In a certain ironic twist, when asked how he remembers this, he says, well, I looked at the transcript. So to a certain extent, he's saying the transcript is reliable for me trying to reconstruct what happened, but with regard to this entry, it's not accurate, but I can't tell you exactly what happened and when. So is there any significance to the lack of clarity in the deposition, or is that the best evidence that there is a rebuttal for a fact finder to decide with regard to whether the statute of limitations was told as a result of actions taken by the taxpayer in December of 2008? Yes, Your Honor. First of all, let me say the taxpayers did file affidavits in this case, specifically denying that they ever contacted the IRS in December of 2008. Is that in the record? I'm just about to explain. They are in the record. They are at docket entries 35-2 and 35-3. They are not in the joint appendix, and that is entirely my fault. I missed it. I was not trial counsel, but they were in front of the district court, and what happened, the reason I missed it was because . . . So these affidavits were submitted to the district court? Yes. Yes, Your Honor. They were submitted . . . I'm not recalling that Judge Conrad addressed those, and he did not address the deposition either. I know you weren't trial counsel, but what did trial counsel do to alert the district court that this evidence was there? The affidavits or . . . The affidavits or the deposition. I don't know the answer to that, Your Honor, but I do know that the district court addresses the factual contentions by the Stovers that they were denying that they had contacted the IRS in December of 2008, but he wanted them to produce some additional evidence to corroborate that denial. That's how I read the order. And I do want to say briefly, in defense of my colleagues here for the government, she also was not trial counsel, and she would not have known, just like I didn't, that these affidavits had been filed, so I don't . . . they were not misleading the court about that. But they are in the record, as I said, at Docket Entry 35-2 and 35-3. But if I could just continue briefly, I do think it is a little more specific in his deposition testimony. He does say clearly on page 168, it wasn't until 2009 that we realized that we weren't going to be able to pay it. We contacted our CPA to set up an appointment. The first meeting was in February because we couldn't get on his slate until February. And then he says, quote, before I met with the CPA in 2009, I don't know that I even knew that there was a pay period or pay schedule that was possible. Now, if the jury accepts that testimony, it seems highly unlikely that he would have submitted a proposal for a pay schedule two months earlier to the IRS. But in some of the cases that both sides have cited, there's, in fact, affirmative evidence that the transcript, whether there's a presumption of regularity or not, might be wrong, not just a hypothetical possibility. But, for example, in this case, I would have thought there would be a letter from We'll pay $500 a month, dated June 1st. And that would be clear that that was the first communication. Or, on the contrary, if it said, please ignore the prior request from the taxpayer made in December of 2008. They can't do that. I'm involved now. It should be X. But here we just have a total absence of anything contrary to the transcript in December of 2008, right? That would corroborate what you've suggested, which is that for the first time, we talked to the CPA in February. For the first time in the summer, there was back and forth with the IRS. Well, what corroborates Mr. Stover's testimony is that, in fact, the records show in February of 2009, the CPA presents the power of attorney form and then shortly thereafter submits a request for an installment agreement and supporting documentation from 2009 in support. On the other part of the ledger, there is no evidence of any communication, other than the transcript, that the taxpayers actually made this request in December of 2008. There's no witnesses with personal knowledge. There are no documents either evidencing the contact or the proposal. And there's no internal IRS record of a contact from the Stovers in December of 2008. And we know from the joint appendix that every time — may I finish this answer,  Yeah, please. Go ahead. Every time that there is a contact between the taxpayer or his representative and the IRS, the IRS makes an internal note of that contact. Who made the contact? What was the subject? What was discussed? And what's the plan of action? And we see that throughout the archive history in this case. There is no record of any contact with the Stovers in December of 2008. And there's an inference to be drawn from that, I argue, at the summary judgment stage. And it would be an inference to be drawn by the jury as well, that the reason there's no records is because there was no contact from the Stovers in December of 2008. Can I ask one question before you go? Yes. Sorry. So, Docket Entry 35, that includes the two affidavits that you're describing, was withdrawn two months later in Docket Entry 39 by your clients, which means it wasn't in front of the . . . once it's withdrawn, it's not in front of the district court. So, help me understand how the district court was supposed to comb through and find two affidavits that were allegedly attached to a withdrawn motion. What I know is reading the order itself, and twice, in two different places in the order, the judge refers to the motion to which the affidavits were attached, and that some of the arguments were incorporated into the response in opposition to the motion for somebody. That's the reason that I say that we know that the judge knew about it. And my mistake is I can't tell Your Honor why they got filed, because the motion and the response were filed back to back, and why the affidavits got filed. I don't know if it's part of the CMSC's filing system. I don't know why they got filed with the motion instead of with the response document. I don't know the answer to that, but I do know, because the judge refers to it twice in his order, that it's reasonable to assume that the judge was aware.  All right. Thank you very much. You've got some rebuttal time. Thank you, Your Honor. Ms. Aventa? Thank you, Your Honors, and may it please the Court. Julia Aventa for the United States. I would like to speak very briefly first to the point raised about the documents filed at docket entry number 35. As Judge Richardson observed, that was a motion for sanctions filed by the IRS, and that was a motion to introduce a standard agreement for   not approved by the IRS. It was approved by standard document retention policies, and failed to retain documents that they had provided in support of their proposal to enter into an installment agreement. In support of this motion, they produced affidavits, which were the only point in the record at which they actually attempted to create any dispute effect as to when that proposal was made to the IRS. They withdrew the motion for sections. So you're excluding the deposition when you say that? The deposition was taken by the IRS. It was an attempt, I believe, to elicit from the taxpayer a clear story of how this came to be because, as is clear, the IRS records for the period of time before the debt was transferred out of the automated collection system and to a human revenue officer is thin. There is not fulsome documentation of contacts with the taxpayer because it wasn't assigned to a person, to a revenue officer who was managing that account, dealing with the power of attorney, dealing with the taxpayer, and attempting to negotiate the agreement. That didn't happen. All right. Okay. Help me understand in the context of looking at the deposition, which was part of the record. If it creates a material dispute of fact, isn't that all that it has to do? If there were deposition testimony that clearly said, I did not contact the IRS. I think everybody can agree that this could have been clearer. They probably should have had an affidavit. I think that's a material distinction there, Your Honor. Right. Okay. Well, if you read the deposition to support what the taxpayer argues here, and there are several places in the deposition where it seems to me pretty clear that he's saying, you know, we didn't have contact in 2008. We had contact in 2009. And if that were found credible by the trier of fact, that would be the basis on which to return a verdict for the taxpayer. So why wouldn't we have a dispute of fact here? I mean, the Stover say it didn't happen in 2008. And the IRS has a document that says it did happen in 2008. So they have a fact claim that says this. The other party has a fact claim that says, no, that's not right. Isn't that just a classic summary judgment situation where you can't render a decision on a material dispute of fact? If the situation were as Your Honor described, and there was sworn testimony that I did not do this, which is not what we have on this deposition. That's a very generous reading of this deposition. But had there been an affidavit, had there been unambiguous deposition testimony, had there been a clear statement that this transcript is erroneous and it represents something that did not happen, that would be the dispute you're describing. Right. I think we all agree if you had that, this would be an easier case and an easier decision. But it seems like, and maybe I'm interpreting your argument wrongly, that you're saying that the deposition is not credible as a matter of law for summary judgment purposes. We note that the taxpayer contradicts himself twice in the space of ten pages.  So, wait a minute. Are you saying that the deposition is or is not credible as a matter of law? I don't think that the court at the summary judgment phase takes a position on credibility as a question of law. I don't think it can. I think if there's a credibility question, I think that alone could defeat summary judgment if there was some wrinkle that would be outcome determinative with regard to credibility. Here, there is not a credibility question raised. The questions raised here have to do with the taxpayer's recollection. He is saying one thing and then saying, oh, no, wait, and changing his story and doing that again and again and again. Now, if he wanted to make a clear statement, he had the opportunity to do so, and I'm going to go to the next part of Your Honor's question. Why do we think, I mean, you keep saying he doesn't have clarity and it's not unambiguous. But typically in a summary judgment context, we sort of draw all reasonable inferences in favor of the non-moving party, right? Like, totally gets you at trial, right? Like if he said all this, like you'd stand up to the jury and be like, you can't believe that gibberish, right? I totally get it. But we have to draw all, like instead of clarity and unambiguousness, at summary judgment, we typically say the opposite of that, which is we draw all reasonable inferences, right, even if you don't say it exactly, like we're giving you the benefit of the doubt. How do you, like, command clarity and unambiguousness? That's not really a word. And in light of the sort of typical Rule 56 standard we apply? Well, that's where you get to the presumptions underlying the IRS records. And do you agree? So I'm happy for you to talk about those. But would you agree that if the presumptions did not apply, were I to find that presumptions did not apply and this was just a standard summary judgment case, that in that situation, taking all reasonable inferences in favor of the taxpayers here, that there's a dispute of fact? I still think that more would be required. Why? That's what I'm not understanding. And I understand the presumption piece, and we can talk about that. But all reasonable inferences, you think we cannot read the deposition in a manner to say that he did not call in 2008? It is not self-controverting evidence. The taxpayer must produce controverting evidence. If there is a dispute as to fact, he can't just say, I said what I said. Wait a minute. Why isn't his testimony, look, we didn't meet with the CPA until 2009. This is the first time we had any contact. Why isn't that sufficient? I mean, it may very well not prevail at trial, but I'm just not understanding why you're saying that is not a fact that contradicts what the government presents. Because, Your Honor, the record does not indicate that the CPA initiated the contact in December of 2008 that led to that entry. The weight of the evidence before the trier of fact. Because now you're asking us to make evidentiary conclusions at the summary judgment stage based on lack of what could have been in the record. We are asking for no negative inferences, Your Honor. We have a position that a record that a call center was contacted, and this can be done by individual taxpayers. And it can be done by individual taxpayers who aren't even necessarily attempting to propose an installment agreement. You can call the automated collection system and say, it looks like I'm facing some financial difficulty. What are my options? How can I pay this debt? Can I offer to compromise it? Might I be able to pay it in installments? There are all sorts of conversations that can be had with this call center individual that won't make it onto the record. And when it did finally get to a human revenue officer, they note, I don't have anything from ACS. There is no archive history here of what happened in this point of contact. But there was no question at the time that the revenue officer received this file that there was a pending installment agreement that they were negotiating the terms of. And the question is only when was the first phone call. When one of the judges is talking, you don't. So is what you're saying based on what appeared on this IRS form, that's the basis by which this revenue officer later made a determination? No, Your Honor. All right. The revenue officer received a package of information from the Stover agency. And the contents of that is noted in her notes. And she notes also, in accordance with that, that there is a pending installment agreement code entered from the call center in the file that she received, but that that is all the information that conveyed from the call center. All right. So how does that help you out? I mean, everybody can acknowledge what's on the IRS form. I don't see how that makes your case any better. If I understand Your Honor's question correctly, you're saying what more information does the IRS have other than a call center, data entry, and the fact that when a person received the file, the file was in process and information had been received as pursuant to the kind of requests that are made in the early stages of this process. That is the evidence we have. And that is where we do get to these presumptions. The presumptions here that adhere to the certificate of assessment. Can you explain the last sentence, I think, of your answer there? The file included the kinds of things that were in the process. I know I'm butchering the words you used. But I guess I'm trying to figure out, I think, as Judge Agee was asking, I understand the three-word entry on the form. And I understand that an officer later looked at those three words and said, well, that must mean that there's a pending installment agreement. You seem to be suggesting there's something more than that. And what I want to know is sort of like more specifically, what exactly is it that I'm supposed to be looking at to understand that? Yes, Your Honor. At page JA-98, the revenue officer makes a notation that taxpayers have submitted documents verifying expenses and income, and that she's reviewing a file that includes a package submitted by their representative that includes verification of expenses. And when is that entry being made? That entry was made in July of 2009. And we all know, through lots of different ways, that in July of 2009, that information was submitted. That doesn't change whether the request was made earlier in 2009 or whether it was submitted in 2008. Because we know that that information, which included information for the first quarter of 2009, could not have been submitted in 2008. That information, by definition, cannot corroborate the existence of an installment plan request in December of 2008. I don't understand. That's what I don't understand. I totally get by July of 2009, there is information for an installment plan. I totally grant you that there is really good evidence of that. But why does that support in any way that the request was made in December of 2008 as opposed to January of 2009 or March or May? It doesn't speak to the point of origin of the offer at all. And that's an important thing to consider here. If there were evidence that the offer had been made in January or February of the possession of the IRS in July, it could be the same. This doesn't actually speak to that. What you're seeing this evidence here, the value it serves here, is that this is not a case like Bode or Fry or a case where there was never an installment agreement contemplated by the taxpayers and the code was actually entered in error. What this does is corroborate the, basically we go back to the presumptions. This is a presumption that the IRS does not enter. It corroborates that the IRS agent believed what was in the record, in the IRS record. There are two points in response to that. The revenue officer who was working the case, the human who received the file in 2009, noted that there was a call center entry that there was a pending installment agreement. And here are some documents that supported that. That they did not. When we look at the package, an 8821, that's a form for representation, right? Mm-hmm. That suggests that the package here included information from not the taxpayer themselves, but information from a representative of some sort. I believe it was their accountant, yes. Why doesn't that actually cut against you? Because the taxpayer's deposition suggests, if anything more clearly, that they didn't hire somebody to represent them until 2009. And so if we take those two things together, that actually corroborates the taxpayer rather than your unknown three-word entry that we can't quite figure out? The taxpayer's testimony actually does not support that they were not dealing with their accountant in 2008, nor that they waited until 2009. On page 163, they speak about how when they filed the return, they looked at it. It would have been in 2008. Were you aware of the tax liability when you filed the tax return in late 2008? No. Well, yes. Did Ed Lloyd, that is the person who is then reflected in these documents later on, or somebody at his office talk to you about it? I'm sure. Yes. And you had to sign the return, didn't you? Yes. So you knew, and you would have signed it in 2008. Probably the end of 2008. Yes. There is plenty of evidence here to muddy the question of when the taxpayer and the accountant developed their position. Well, counsel, the problem is as soon as you start to say you're muddying the question, it sounds like that's the kind of thing that makes it difficult to resolve on summary judgment. If I understand from the record in your argument the position that the IRS is that the taxpayers undisputably know that they owe taxes. In fact, they don't even dispute that it's $160,000. And they know that they owe those taxes in 2008, November of 2008, and that by December of 2008, they also know they're unable to pay that tax liability. And the IRS believes that they reached out through some automated line and said, we know we owe taxes, we can't pay them, we want to work this out. And then they contacted their accountants and in 2009 started to deal with human beings at the IRS to try and work it out. And therefore, the statute of limitations should be told from 2008. And, of course, had the IRS not waited all the way until the very 11th hour to file this, this would not be an issue. They could have filed this in 2016, 2017, whenever it was. But how is the issue clear enough on summary judgment that the date of December is when the taxpayer made the request to hold in abeyance the collection of the taxes? Because the taxpayer has not presented evidence sufficient to rebut the IRS certificate of assessments and payments. So if there is a presumption and instead in this case there had either been verified affidavits or the taxpayer was sworn and testified at the hearing, how does that affect the presumption of correctness? Well, it is a rebuttable presumption. And if the taxpayer is able to rebut it, that defeats summary judgment. If they say, here is an actual, unambiguous, factual position I am taking that I did not call the IRS, I did not have any contact with the IRS except through my accountant whom I did not authorize to contact the IRS on my behalf until February 2009, that could be sufficient to defeat summary judgment. Because we wouldn't have to draw reasonable inferences. We could just read it without reasonable inferences. Well, you are drawing a reasonable inference that it is true. But yes, you are saying that the taxpayer's sworn testimony is correct. But the whole point of Rule 56 is that we do draw those reasonable inferences. Yes. Can I ask about the presumption of correctness? I had a case last year in the IRS. Your colleague stood there and said the exact opposite of what you are saying, said there was a date in the record as to when something was submitted. It is literally the same basic context. There is a case called Pond. And the IRS lawyer said that must be wrong. So it is wrong. That data entry is wrong and you, court, should ignore it. And we rejected that argument. But it seems odd to me to be in a world where the IRS is representing in some cases that we should ignore the dates that are included on their documents. And in other cases, we should absolutely defer to them, absent perfect crystal clarity from the taxpayer on the other side, which ought to be really hard because we waited a darn decade to show up and challenge what had happened. This seems like a problem to have an IRS that is running a railroad that way. Do you have thoughts about why the IRS in one case says ignore our dates and in another case is telling us that we must abide by them? In cases where the presumption has been rebutted, we will not stand by evidence that is demonstrated to be incorrect. I cannot speak to the context of that case. I'm not familiar with that record. I can only assume if a colleague of mine took that position here that that must have been. In the record, there was something that rebutted that presumption, that made clear that there was an erroneous transcript entry. That is not present here. Here, all we have is an entry that is presumed correct, no affirmative evidence in contravention of that position, ambiguous evidence that can be charitably read, potentially to raise an issue of fact, but no affirmative evidence contravening that presumed correct data entry, and a volume of subsequent evidence indicating that, yes, there was an installment agreement proposed. There were terms negotiated, and this went on over time, and at no point was anyone protesting and saying, IRS, you're wrong. IRS, this isn't what I said. This isn't what I want. This isn't what I'm trying to make happen here. The question is when did the process start, and all of the evidence is that the process took its ordinary course without objection from either party. So the evidence that it started when the IRS said it did is unambiguous, and the evidence that it didn't start when the IRS said it did is thoroughly ambiguous. So the presumption has not been rebutted on this record here, and we would stand on that. We would say that the presumption does not arise between summary judgment and trial. It arises at the point of origin of the information whose correctness is in question. And the burden is never on the commissioner, on the IRS, to reprove its own evidence unless, as Your Honor noted, there are patent contradictions in the record or points where the commissioner can't reasonably maintain that the evidence in that certified transcript is correct. When you know it's not, you know it's not. Here we don't know it's not based on the taxpayer's testimony, and that is why summary judgment was appropriate here. We come into this with a presumption in favor of the commissioner that says, you're keeping good records. You're doing your job as you're supposed to. And I, on that point, want to speak to the lower court's distaste and Your Honor's expressed distaste for the apparent delay in enforcement. I do see that. I'm sorry. The statute of limitations is ten years, and over the course of these ten years, the IRS engaged in multiple cooperative and administrative attempts to collect the tax before the suit was referred to the Department of Justice. They did the math and observed a stay on levy action from December 12, 2008, through September 16, 2010. So those 643 days are added on at the end. That's not delay. That only ever adds up to the ten years that Congress has granted the IRS to collect. All right. Thank you very much. Thank you. Mr. Kingsbury, you've got some rebuttal time. Thank you, Your Honor. I'll be brief. I have three points to make. First, Judge Richardson, to the extent that it matters, that it's important at all to you, the two places in the district court order I was referring to are Joint Appendix page 347 and 353. That's where the district court refers to the motion for sanctions and the arguments contained therein. Your position is that that incorporates affidavits that were filed at that time? I believe the court was aware of them. That's my argument. I can't prove that, obviously. The only thing I can prove is that they were submitted to the district court. That's all. It was in response to the question, why wasn't there an affidavit? There was an affidavit. My second point is the inference to be raised by the fact that in order for this to have been a valid proposal to toll the statute of limitations, and the government agrees with this, the taxpayers would have had to have proposed a specific monthly or periodic payment in a specific amount. And the IRS records show there's no record of any specific amount having been proposed by the taxpayers until October of 2010. My brief is wrong about that. I said it was 2009. It was October of 2010 when there was finally a proposal for a specific amount. And the inference to be drawn from the absence of any record of a specific amount prior to that is that there wasn't a valid proposal made in December of 2008 because there's no evidence that a specific amount was proposed. And the last point I wanted to make, just to follow up on Mr. Stober's deposition testimony, which I believe needs to be read in the light most favorable to Mr. Stober, and the inferences to be drawn that are favorable to him should be applied at the summary judgment stage. He testified that in the 2009 meeting with the CPA, he said, we explained to the CPA the pickle we were in, and we asked the CPA to contact the IRS to find out what our options were. Well, if that's believed, he didn't know what his options were prior to that. And then on page 165 of the Joint Appendix, he says the CPA rolled out what his plan was. He was going to reach out to the IRS and find out what their options were. Specifically, and this is on 166, he was going to see if they, the IRS, would agree to a payment schedule. Now, in the light most favorable to Mr. Stober, he's explaining the chronology of how the contact with the IRS, the first contact, occurred. And I think the inference to be drawn there in favor of Mr. Stober's was, this is the first contact with the IRS, and all I would say is the documents we do have in the record corroborate this chronology, because it's in February when the Power of Attorney form is filed, and it's followed shortly by, according to the records, a cover letter from the Power of Attorney, a request for an installment agreement, and supporting documents. That's evidence from which a reasonable jury can conclude that we're going to credit the Stober's account of this and find that, in fact, the entry from December of 2008 was made in error. Thank you, Your Honor. All right, thank you very much. I'm going to come down and greet counsel, but first we'd ask the court to adjourn court for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, Julius N. Richardson, Michael Stefan Nachmanoff